208 U.S. 583 (1908)
NORTHERN PACIFIC RAILWAY COMPANY
v.
STATE OF MINNESOTA ex rel. THE CITY OF DULUTH.
No. 92.
Supreme Court of United States.
Argued December 20, 23, 1907.
Decided February 24, 1908.
ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.
Mr. Charles W. Bunn for plaintiff in error.
Mr. Bert Fesler for defendant in error.
*587 MR. JUSTICE DAY delivered the opinion of the court.
This case comes here from the Supreme Court of Minnesota, to review a judgment of that court affirming a judgment in mandamus of the St. Louis County Court in that State, which required the Northern Pacific Railway Company, plaintiff in error, to repair a certain viaduct in the city of Duluth, carrying the railway company's tracks over Lake avenue. 98 Minnesota, 429. The Northern Pacific Railway Company is the successor in title of the St. Paul and Duluth Railroad Company, which derived its title from the Lake Superior and Mississippi Railroad Company. The Lake Superior and Mississippi Railroad Company, whose rights and obligations have devolved upon the Northern Pacific Railway Company, had the following provisions in its charter:
"SEC. 6. The said company may construct the said railroad across any public or private road, highway, stream of water or watercourse if the same be necessary: Provided, That the same shall not interfere with navigation; but said company *588 shall return the same to their present state, or in a sufficient manner so as not to impair the usefulness of such road, highway, stream of water, or watercourse, to the owner or to the public."
"SEC. 17. This act is hereby declared to be a public act, and may be amended by any subsequent legislative assembly in any manner not destroying or impairing the vested rights of said corporation."
The Lake Superior and Mississippi Railroad laid its first track across what is now Lake avenue in 1869. Lake avenue was graded and improved for public traffic in the winter and spring of 1871, and since that time it has been in continuous use as a public street. In the year 1891 the amount of business on Lake avenue and the number of tracks therein had become so great that the constant passage of cars and engines endangered the safety of the public. The city of Duluth thereupon prepared plans and specifications for the construction of the viaduct over Lake avenue, and made a demand upon the railroad company to construct the same. The railroad company, after considerable negotiation, in which it denied its obligation to build the viaduct, entered into a contract with the city of Duluth, which is set up in its answer in this case as a full defense to the right of the city of Duluth to require the repair of the viaduct at the railroad company's expense. This contract was dated September 2, 1891, and provided that the city should build the bridge or viaduct upon Lake avenue to carry that street over the railroad tracks which had theretofore crossed said avenue at grade. The railroad was to contribute to the expense of the construction in the amount of $50,000, and the city undertook, for the period of fifteen years, to maintain the part of the bridge over the railroad's right of way, and to perpetually maintain the approaches. The city built the bridge at an expense of $23,000, in addition to the $50,000 which was paid by the railroad company.
In 1903, the viaduct and its appoaches having become dangerous for public use, the city of Duluth acted within the *589 power conferred on it by law to require railroad companies to construct bridges and viaducts at their own expense at public railroad crossings, and having investigated the subject, approved the plans prepared by the city engineer, and on the thirteenth of July, 1903, passed the following resolution:
"Resolved, That the repairs set forth in said specifications are necessary and proper, and are demanded by the public safety and convenience.
"Resolved, further, That said repairs are reasonable and practicable for the repairs of said viaduct and its approaches; and that said repairs as set forth in said specifications are hereby adopted and approved.
"Resolved, further, That this council does hereby demand that the Northern Pacific Railway Company immediately proceed to repair said viaduct and approaches in accordance with said specifications.
"Resolved, further, That a copy of this resolution be forthwith served upon the Northern Pacific Railway Company in the same manner as service may be made of summons in a civil action by the city clerk.
"Resolved, further, That in the event of the failure or refusal of said company to comply with such demand that the city attorney be and he is hereby instructed to institute such action or actions as to him may seem proper to compel the said railway company to make such repairs, or such portion thereof as the court may determine it is legally liable to make."
It was in pursuance of this resolution that this action in mandamus was begun and the writ issued, requiring the railroad company to make the repairs in accordance with the plans adopted and approved by the city council.
We are met at the threshold with the question of the jurisdiction of this court. It is the contention of the plaintiff in error that in requiring the railroad company to repair the viaduct at its own expense the obligation of the contract of September 2, 1891, has been impaired by legislation of the municipal corporation, in violation of the contract clause of the *590 Constitution of the United States. In cases arising under this clause of the Federal Constitution this court determines for itself whether there is a contract valid and binding between the parties, and whether its obligation has been impaired by the legislative action of the State. Stearns v. Minnesota, 179 U.S. 223, 233. If the plaintiff in error set up a claim of contract upon substantial grounds and with allegations showing an impairment of its obligation by state or municipal legislation, a case was presented which might be brought to this court in event such legislation was upheld. Chicago, Burlington & Quincy R.R. Co. v. Nebraska, 170 U.S. 57.
It is no longer open to question that municipal legislation passed under supposed legislative authority from the State is within the prohibition of the Federal Constitution and void if it impairs the obligation of contracts. Mercantile Trust Company v. Columbus, 203 U.S. 311-320, and cases there cited. But it is contended that the action of the city in this case amounts to no more than a denial of the validity and binding force of the contract in question and brings the case within St. Paul Gaslight Co. v. St. Paul, 181 U.S. 142, followed in City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Company, 197 U.S. 178. In the St. Paul case the city refused to pay certain sums claimed to be due on contract of the company and ordered the gas posts to be removed from the streets. Such a denial of liability on the part of a municipal corporation was contained in an ordinance to that effect; it was held this was not legislation impairing the obligation of the contract, and it was said in that case that the ordinance "created no new right or imposed no new duty substantially antagonistic to the obligations of the contract, but simply expressed the purpose of the city not in the future to pay the interest on the cost of construction of the lamp posts which were ordered to be removed.. . . When the substantial scope of this provision of the ordinance is thus clearly understood it is seen that the contention here advanced of impairment of the obligation of the contract arising from this provision *591 of the ordinance reduces itself at once to the proposition, that wherever it is asserted on the one hand that a municipality is bound by a contract to perform a particular act and the municipality denies that it is liable under the contract to do so, thereby an impairment of the obligations of the contract arises in violation of the Constitution of the United States. But this amounts only to the contention that every case involving a controversy concerning a municipal contract is one of Federal cognizance, determinable ultimately in this court. Thus to reduce the proposition to its ultimate conception is to demonstrate its error."
And such was the effect of the ordinance in the subsequent case of City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178.
We think the municipal legislation complained of in this case amounts to more than a mere denial of liability or of the binding force of the former contract. The legislation which deprives one of the benefit of a contract or adds new duties or obligations thereto necessarily impairs the obligation of the contract, and when the state court gives effect to subsequent state or municipal legislation which has the effect to impair contract, rights by depriving the parties of their benefit, and make requirements which the contract did not theretofore impose upon them, a case is presented for the jurisdiction of this court. New Orleans Waterworks Co. v. Louisiana, 185 U.S. 336, 350, 351. And this jurisdiction has been frequently exercised in cases of municipal ordinances having this effect upon prior contract rights. Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65-81; City of Cleveland v. Ry. Co., 194 U.S. 517. As was said in City of Dawson v. Columbia Avenue Savings Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, it is not always easy to determine on which side of the line a given case may fall. But recurring to the resolution in this case, we are of the opinion that it is legislative action which impairs the obligation of the contract, if the contract is of binding force, which is a question to be determined upon the *592 merits. For the judgment of mandamus against the railroad company could not have been rendered in this case without the prior legislation by the city ascertaining the necessity for repairs upon the viaduct, the character and extent of the same, and imposing upon the railroad company the duty to enter upon the street and construct the improvement.
This municipal action is more than a mere denial of the obligation of the contract; it affirmatively requires that certain improvements shall be made upon the viaduct by the railroad company which the council deemed to be necessary. It required legislative action to determine the nature and character of these improvements. The mandamus issued by the court is but the carrying of the ordinance into effect. If the contract was of binding force and effect it would relieve the railroad company from making such improvements within the right of way for the period of fifteen years and permanently relieve it of other improvements upon the viaduct. To require that it shall make these improvements within the period named, as this legislation does, is to require the railroad to incur expenses for things which the city had expressly contracted to relieve it from during the period mentioned. Assuming for jurisdictional purposes that the company had a valid claim of contract, it was impaired by the legislation of the city in question, we therefore think there is jurisdiction in the case.
Passing to the merits, it is the contention of the railroad company that when this contract was made the Supreme Court of Minnesota had decided that, as to highways which were constructed after the railroad was built, there was no obligation upon the company to construct overhead bridges or crossings, and whatever the rule might be as to requiring a railroad company to construct such overhead bridges in the interest of public safety as to streets in existence when the railroad was built, it could not be required so to do when the highway was constructed after the railway had acquired its right of way and laid its tracks.
It is difficult to perceive how a judicial determination that *593 the railroad company could not be charged with the expense of such structures as this viaduct as to streets laid out after the railroad was built, could have induced the agreement to pay $50,000 towards the improvement in question in a street first occupied by the railroad company. And the recitals of the contract of September, 1891, are to the effect that the payment of the $50,000 was in lieu of assessments for benefits in excess of damages for the taking of property of the railroad company to be caused by said public improvement, which might be imposed upon the property of the railroad company.
But was there such settled judicial construction? In the case of State ex rel. City of Minneapolis v. St. Paul, Minneapolis & Manitoba Railway Company and Another, 98 Minnesota, 380, a case decided by that court upon the same day it handed down its decision in the case at bar, the subject was elaborately examined and a conclusion reached that the charter of a railroad, similar to the one granted the Lake Superior and Mississippi Railroad Company above set forth, imposed an obligation upon the railroad company as to highways, roads and streets, over which the railroad was constructed, to keep the same in good condition and repair, whether laid out after the building of the railroad or before, and that such requirement in the interest of public safety embraced an overhead bridge necessary for the public safety, and that a requirement that it should be built at the expense of the railroad company was an exercise of the police power of the State, and did not amount to taking property without due process of law. In that case the cases relied upon by the learned counsel for the plaintiff in error in this case as establishing a contrary doctrine, prior to the making of the contract, were reviewed. They are: State of Minnesota ex rel. City of Minneapolis v. St. Paul, Minneapolis & Manitoba Railroad Co., 35 Minnesota, 131, and State of Minnesota ex rel. St. Paul, Minneapolis & Manitoba Railroad Company v. District Court of Hennepin County, 42 Minnesota, 247. It was there pointed out, and we think correctly, *594 that while the learned court, in State of Minnesota ex rel. St. Paul, Minneapolis & Manitoba Railroad Company, limited its ruling to cases where railroads had been constructed in streets already laid out and expressly disclaimed that the doctrine there announced would necessarily apply where a new street had been laid out over the railroad after its construction, the question now made was not involved in the case, and the decision then made was limited to existing streets only. In the second case above cited (42 Minnesota, 247), while it was held that planking the tracks at crossings was a part of the construction of the highway, and not a safety device for the protection of the thoroughfare, and therefore not within the proper exercise of the police power, so that the cost thereof could be required from the company, the court did say in the most emphatic manner that safety devices might be required at new streets, and that cattle guards and gates were such safety devices, the construction of which would be required at the expense of the company. And the court said:
"When the railroad company accepted its charter it received its franchises subject to the authority and power of the State to impose such reasonable regulations concerning the use, in matters affecting the common safety, of its dangerous enginery, and not merely subject to the then existing regulations as applicable to then existing conditions; and whether the obligation now in question had been imposed at this time by direct act of the legislature, or, as is the case, arises from the laying out of a new highway, to which the previously existing law becomes applicable, can make no difference.
"The fallacy involved in the claim of the relator, and, as we think, in some decisions by which its claim is supported, arises from a failure to distinguish between rights of property, which confessedly are protected under the Constitution from being divested or appropriated to other purposes without compensation, and the very different matter concerning the manner in which the owner may use his property so as not to unnecessarily endanger the public. The claim of the relator involves *595 an assumption that when the railroad constructed its line of road, conforming to the requirements of the law as to all then existing highway crossings, it had a constitutional right, by virtue of its priority, to always afterwards operate its road unembarrassed by being required to observe like precautions with respect to highways that might be thereafter laid out across the railroad, except upon the condition that it should receive compensation, not merely for whatever of its acquired property might be taken for the other use, but also for the expense and burden of conforming its own conduct to the newly-existing conditions  of conforming to a general police regulation of the State, not before applicable. There was no such exclusive or superior right acquired by priority of charter, or of the construction of this railroad highway. It cannot be supposed that, when its franchises were granted to this relator to construct and operate this railroad, it was contemplated, either by it or by the State, that no more public highways should be laid out which should increase the number of places where the ordinary police regulations would have to be complied with by the railroad company to its inconvenience and expense. On the contrary, it must have been understood and contemplated, especially in a new State rapidly advancing in population and in the development of its resources, where new towns were springing up, and new avenues for travel and traffic were becoming necessary, that new streets and roads would be and must be laid out, and that many of these would necessarily cross existing railroad lines. We cannot resist the conclusion that, so far as concerns the matter now under consideration, the charter of the relator was taken subject to the right of the State to impose this duty whenever, by reason of the establishing of new highways, it should become necessary; and hence the relator is not entitled to compensation for obedience to this requirement. Lake Shore &c. Ry. Co. v. Cincinnati &c. Ry. Co., 30 Ohio St. 604; Chicago & Alton R. Co. v. Joliet &c. R. Co., 105 Illinois, 388, 400, 404; City of Hannibal v. Hannibal & St. Joseph R. Co., 49 Missouri, 480; City of *596 Bridgeport v. New York & New Haven R. Co., 36 Connecticut, 255."
As the Supreme Court of Minnesota points out in the opinion in 98 Minnesota, 380, above referred to, the state courts are not altogether agreed as to the right to compel railroads, without compensation, to construct and maintain suitable crossings at streets extended over its right of way, after the construction of the railroad. The great weight of state authority is in favor of such right. (See cases cited in 98 Minnesota, 380.)
There can be no question as to the attitude of this court upon this question, as it has been uniformly held that the right to exercise the police power is a continuing one; that it cannot be contracted away, and that a requirement that a company or individual comply with reasonable police regulations without compensation is the legitimate exercise of the power and not in violation of the constitutional inhibition against the impairment of the obligation of contracts. In New York & New England Railroad Company v. Bristol, 151 U.S. 556, 576, the doctrine was thus laid down by Chief Justice Fuller, speaking for the court:
"It is likewise thoroughly established in this court that the inhibitions of the Constitution of the United States upon the impairment of the obligation of contracts, or the deprivation of property without due process, or of the equal protection of the laws, by the States, are not violated by the legitimate exercise of legislative power in securing the public safety, health and morals. The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulations in particulars essential to the preservation of the community from injury. Beer Co. v. Massachusetts, 97 U.S. 25; Fertilizing Co. v. Hyde Park, 97 U.S. 659; Barbier v. Connolly, 113 U.S. 27; New Orleans Gas Company v. Louisiana Light Company, 115 U.S. 650; Mugler v. Kansas, 123 U.S. 623; Budd v. New York, 143 U.S. 517."
The principle was recognized and enforced in Chicago, Burlington *597 & Quincy R.R. Co. v. Chicago, 166 U.S. 226, where it was held that the expenses incurred by the railroad company in erecting gates, planking at crossings, etc., and the maintenance thereof, in order that the road might be safely operated, must be deemed to have been taken into account when the company accepted its franchise from the State, and the expenses incurred by the railroad company, though upon new streets, might be required as essential to the public safety. In Detroit Railroad Co. v. Osborne, 189 U.S. 383, it was held that the State of Michigan might compel a street railroad to install safety appliances at an expense to be divided with a steam railroad company occupying the same street, notwithstanding the steam railroad was the junior occupier of the street. The subject was further under consideration in New Orleans Gas Light Co. v. Drainage Commission of New Orleans, 197 U.S. 453, where it was held, that although the gas company had permission from the city to lay its pipes under the streets, it might be required to remove the same at its own expense, in the exercise of the police power in the interest of the public, in order to make way for a system of drainage which was required, in the interest of the public health, without compensation to the gas company; and that uncompensated obedience to regulations for public safety under the police power of the State was not a taking of property without due process of law.
The same principles were recognized and the previous cases cited in Chicago, Burlington & Quincy Ry. Co. v. People of the State of Illinois ex rel. Drainage Commissioners, 200 U.S. 561, and again in Union Bridge Co. v. United States, 204 U.S. 364. The result of these cases is to establish the doctrine of this court to be that the exercise of the police power in the interest of public health and safety is to be maintained unhampered by contracts in private interests, and that uncompensated obedience to laws passed in its exercise is not violative of property rights protected by the Federal Constitution.
In this case the Supreme Court of Minnesota has held that *598 the charter of the company, as well as the common law, required the railroad, as to existing and future streets, to maintain them in safety, and to hold its charter rights subject to the exercise of the legislative power in this behalf, and that any contract which undertook to limit the exercise of this right was without consideration, against public policy and void. This doctrine is entirely consistent with the principles decided in the cases referred to in this court. But it is alleged that at the time this contract was made with the railroad company it was at least doubtful as to what the rights of the parties were, and that the contract was a legitimate compromise between the parties, which ought to be carried out. But the exercise of the police power cannot be limited by contract for reasons of public policy, nor can it be destroyed by compromise, and it is immaterial upon what consideration the contracts rest, as it is beyond the authority of the State or the municipality to abrogate this power so necessary to the public safety. Chicago, Burlington & Quincy R.R.C. v. Nebraska ex rel. Omaha, 170 U.S. 57.
We find no error in the judgment of the Supreme Court of Minnesota, holding the contract to be void and beyond the power of the city to make, and it will, therefore, be
Affirmed.