### COOK v. SALT LAKE CITY et al.

No. 2835.   Decided April 28, 1916.   (157 Pac. 643.)

1. EMINENT DOMAIN—DAMAGING PROPERTY—COMPENSATION. Under Const. Art. 1, Section 22, providing that private property shall not be taken or damaged for public use without just compensation, where plaintiff's realty is damaged by the erection of a viaduct by a railroad, as required by city ordinance, plaintiff is entitled to compensation for such damages. (Page 61.)

2. EMINENT DOMAIN—CONSTRUCTION OF VIADUCT—LIABILITY OF RAILROAD AND CITY. Where by the construction and maintenance of numerous tracks, and the running of numerous trains across the intersections of streets, a railroad made imperative the building of a viaduct to take a street over the tracks, a measure which was required by city ordinance, and which damaged plaintiff's property, the road, and not the city, was liable to plaintiff for such damage. (Page 62.)

3. EMINENT DOMAIN—DAMAGES TO PROPERTY—EVIDENCE. In an action against a railroad and a city for damages to plaintiff's realty by the construction of a viaduct, where a witness testified as to the depreciation in value of plaintiff's property, the ruling of the court sustaining objection to the question whether the street had benefited from the erection of the viaduct in a business way, on the ground that it was incompetent, irrelevant, and immaterial, was proper, since evidence tending to show that property generally abutting on the street, situated differently, with respect to the viaduct, from the property in question, had benefited therefrom, would not even weaken the testimony respecting the depreciation in market value. (Page 65.)

4. EMINENT DOMAIN—DAMAGES TO PROPERTY—EVIDENCE. In an action against a railroad and a city for damages to plaintiff's property by the construction of a viaduct, evidence of a witness, who had testified that the market value of defendant's property had depreciated in value $350, that the building of the viaduct had contributed to the recent development of the street as a business street, was properly excluded. (Page 66.)

Cross-appeals from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Margaret A. Cook against Salt Lake City and the Denver & Rio Grande Railroad Company.

From a judgment for plaintiff the railroad company appeals, and from a judgment for the city plaintiff appeals.

AFFIRMED.

*Ball, Mulliner & McCarty* for plaintiff.

*H. J. Dininny,* City Attorney, and *A. Myers* and *W. H. Folland,* Assistant City Attorneys, for defendant city.

*Van Cott, Allison & Riter* for defendant railroad company.

POINTS OF APPELLANT RAILROAD COMPANY.

The viaduct belongs to the city as the ordinance provides it shall be a public highway. The erection of the viaduct constitutes only a change of grade under the weight of authority.

The decisions of our Supreme Court under this statute hold the city itself liable for damages to abutters: 32 Utah 253, *Kimball* v. *Salt Lake City;* 32 Utah 261, *Hempstead* v. *Salt Lake City;* 40 Utah 221, *Webber* v. *Salt Lake City.*

Railroad corporations may be required, at their own expense, not only to abolish existing grade crossings, but also to build and *maintain suitable bridges or viaducts,* to carry highways, newly laid out, over their tracks, or to carry their tracks over such highways. *Chicago, M. & St. P.* v. *Minneapolis,* Advance Sheets U. S. S. Ct., 1914, No. 9, p. 400.

This doctrine applies in the case at bar, as it clearly shows Salt Lake City has the authority to compel the railway company to build a viaduct.

Where a railroad company raises the grade of a street through a contractor, pursuant to authority granted to it or to the contractor by a city acting under the power conferred by charter to alter the grade of streets, the city alone is liable to an abutter for damages resulting from the change.

*Dennison, etc.,* v. *James,* 49 S. W. 660. See also *Pabst Brewing Co.* v. *City of Milwaukee,* 133 N. W. 1112; *Shaw* v. *Crocker,* 42 Cal. 435; *Pearson* v. *Zable,* 78 Ky. 170; *Crofford* v. *Atlanta B. & A. R. Co.,* 48 So. 366; *Talbot* v. *N. Y. & H.*

*R. Co.*, 45 N. E. 382; *Robinson* v. *Great Northern R. Co.*, 51 N. W. 384; *Atchison, etc., R. Co.* v. *Arnold*, 35 Pac. 780; *Sauer* v. *City of New York*, 206 U. S. 536.

McCARTY, J.

Plaintiff brought this action to recover alleged damages to her real property situate on the southeast corner of the intersection of Fourth South and Fifth West Streets in Salt Lake City, Utah, by the erection of a viaduct by the Denver & Rio Grande Railroad Company. The record shows that the railroad company erected the viaduct in compliance with certain ordinances of Salt Lake City.

Plaintiff, among other things, in her complaint alleged:

"That prior to the wrongs complained of the property was valuable for rental and residence purposes, and was improved with a modern cottage and a small store building; * * * that the said acts complained of narrowed the street opposite the plaintiff's premises, congested traffic on said street, deprived the plaintiff of convenient access, darkened and dampened the said street, deprived the plaintiff of her easement of light and air and her view, made the plaintiff's property dirty and dusty, caused the plaintiff's property to be thrown under the grade of the street, and for sale purposes practically into the railroad yards, injured and rendered the plaintiff's property permanently less valuable for sale, rental or residence purposes, and damaged the plaintiff in the sum of $2,500."

In its answer to plaintiff's complaint, Salt Lake City, as a special defense, alleged that it, in the exercise of police powers vested in it, determined and declared by ordinance that in the interest of public safety and for due protection of the lives and property of its inhabitants it was necessary that the grade of Fourth South Street, at its intersection with Fifth West Street, be raised (by means of a viaduct) above the railroad tracks of the railroad company lying upon said Fifth West Street, and to that end directed and required the railroad company to construct at its own expense the viaduct, and "to thereafter care for and maintain the structure or supporting portion of said viaduct, and that, if the plaintiff

has sustained any damages by the erection of the viaduct, they are recoverable, if at all, from the railroad company.''

The railroad company, in its answer, alleged, as a special defense, that it built the viaduct by command and under the direction of Salt Lake City, and that it ''would not have erected said viaduct, or any part thereof, unless it had been so directed and required as aforesaid.''

Plaintiff moved the court to strike the special defenses from the answers of both defendants, and also demurred on the ground that the allegations as to such defenses did not contain facts sufficient to constitute a defense. The court denied the motions to strike, overruled the demurrer to the special defense interposed by the city, and sustained the demurrer to the special defense of the railroad company.

The case was tried to a jury. When the evidence was in, Salt Lake City moved for a directed verdict in its favor upon the grounds set forth in its special defense. The motion was granted, and the jury accordingly returned a verdict in favor of the city. A similar motion was made by the railroad company, based on the grounds set forth in its special defense. This motion was denied, and the cause submitted to the jury as to the railroad company. They returned a verdict in favor of plaintiff and against the railroad company for $1,400. From the judgment rendered on the verdict, the railroad company has appealed to this court. Plaintiff also appeals from the judgment in the city's favor.

The important questions presented by the appeal are: (1) Did the trial court err in holding that the city was not liable for the damage, if any, done to plaintiff's property by the erection of the viaduct? and (2) Did the court err in refusing to direct a verdict for the railroad company?

Section 22 of Article 1 of the Constitution of this state provides that ''private property shall not be taken or damaged for public use without just compensation.'' The jury found, and the great preponderance of the evidence introduced by both the plaintiff and the defendants shows, that plaintiff's property was damaged by the erection of the viaduct; hence it necessarily follows that she is entitled to compensation for such damages. The question there-

fore arises: Are both, or only one, of the defendants liable? and, if only one, which is it? This question is not difficult of solution. The record shows that the railroad company has constructed, and is maintaining, numerous railroad tracks extending north and south across the intersection of Fourth South and Fifth West Streets. In fact, the evidence introduced by the railroad company shows that the intersection is entirely covered by the company's shops and railroad tracks. Mr. Blake, a witness for the railroad company, on this point testified in part as follows:

"Q. It (the railroad company) runs its tracks under the structure at right angles to it, does it not? A. Yes, sir. The viaduct was built over them. * * * We could not very well put any more tracks there, unless we take the shops out."

It will thus be observed that the railroad company, by the construction and maintenance of its numerous tracks and the running of its numerous trains across the intersections of the streets, created a condition that made the building of the viaduct imperative. Under these circumstances and conditions we know of no rule of law, or principle of equity, which imposes on the city the obligation of paying any part of the expense incident to, or growing out of, the erection **2** of the viaduct. The claim made on behalf of the railroad company that, because the city required it to erect the viaduct, the making of the improvement was an involuntary act on its part, and hence the city should pay the damage caused thereby to abutting property, has no basis in reason, law or equity. We have a statute (Comp. Laws 1907, Section 434) which, so far as material, provides that a railroad corporation shall have power "to cross * * * streets or highways, or railroads, which its road shall intersect, in such manner as to afford security for life and property and subject to the duty of immediately restoring such * * * street, highway or railroad to its former condition, as nearly as may be." This statute is but declaratory of the common law, which imposes upon railroad companies the duty of restoring streets and highways, where crossed by their tracks, to a reasonably safe and ordinarily good condition for the use of the public.

That the railroad company makes no use of the structure, except to furnish the public the means of passing along Fourth South Street without in any way interfering with the movements of its trains at that point, is entirely beside the question. It is a matter of common knowledge that there are many railroad crossings, other than viaducts, which are not used by railroad companies in traffic, and which are not necessary for railroad operations. Because crossings are used exclusively by the public, it cannot be contended that railroad companies ought to be relieved from the expense of maintaining such crossings and of keeping them and the approaches thereto in good condition. *State ex rel. Minneapolis* v. *St. Paul, M. & M. R. Co.*, 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581, 8 Ann. Cas. 1047; *Northern Pac. Ry. Co.* v. *Duluth*, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630; *People* v. *U. P. Ry. Co.*, 20 Colo. 186, 37 Pac. 610; *City of Minneapolis* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313.

There is no difference in principle, between compelling a railroad company to construct at its own expense the viaduct in question and to pay the damages done thereby to private property, and in requiring it to provide suitable crossings and approaches where its tracks intersect and cross streets, roads and highways, and to answer for damages, if any, done to private property abutting thereto. While there is a conflict in the authorities respecting the right to compel a railroad company, after it has constructed its tracks, together with necessary and suitable crossings and approaches thereto, where roads, highways and streets cross its right of way, to later on make, at its own expense, new, improved and more expensive crossings to meet the changed conditions at such crossings, caused by the laying of additional tracks, the increased traffic of the railroad and the more extensive use of the crossings by the public, yet the great weight of authority—the better-reasoned cases—uphold such right. The apparent conflict in the authorities respecting the extent and scope of the liability of railroad companies to respond in damages in cases of this kind is, in the main, due to differences in constitutional provisions. Constitutions of some of

the states provide that private property shall not be *taken* for public use without just compensation. Those of other states contain provisions, similar to ours, that private property shall not be *taken or damaged* for public use without just compensation. ⁕ In the states having the former provision, consequential damages to abutting property may not be recovered. In 10 R. C. L. 164, under the heading "Damages When No Property is Taken," the states, twenty-two in number, having the provision of our Constitution, are enumerated. It is there said:

"The constitutional provisions requiring compensation for damages were rightly looked on by the courts as intended to remedy the hardship of the old rule that property must be actually taken to entitle the owner to compensation, and they have consequently been given a liberal construction. The contention, which at first was frequently made, that they applied only to direct physical injury to property, was uniformly rejected."

Again, on page 173:

"The liability for changes of grade in states which have adopted the constituional amendment is, of course, not limited to a general raising or lowering by the municipal authorities to make travel safe or more convenient, but extends to the raising of the whole or part of the width of a street to carry it over a railroad, or to a change in grade for the benefit of a street railway, or to any other changes that inflict special and peculiar damage on the abutting property."

The question under consideration was involved in the case of *Pueblo* v. *Strait*, 20 Colo. 13, 36 Pac. 789, 24 L. R. A. 392, 46 Am. St. Rep. 273. The fourth syllabus of that case, which reflects the opinion on this point, is as follows:

"The building of a viaduct in a public street of a municipal corporation is such as extraordinary use of the street as will entitle the owner of abutting property to damages, when the means of ingress and egress to his property is obstructed or impaired thereby."

In *Muhlker* v. *Harlem Railroad Co.*, 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872, the same question, in principle, was involved. The court, in the course of a well-considered opinion reversing the New York Court of Appeals, says:

"The court rested its ruling on one point, the effect of the act of 1892, under which the structure complained of was erected; the court declaring that act a command to the railroad company in the interest

of the public—indeed, made the state the builder of the new structure and the use of it by the railroads mere obedience to law. * * * And the court concluded that it was the state, not the railroads which did the injury to plaintiff's property. The answer need not be hesitating. The permission, or command of the state, can give no power to invade private rights, even for a public purpose, without payment of compensation; and payment of such compensation, when necessary to the performance of the duties of a railroad company, may be, as we have already observed, part of its submission to the command of the state. The railroads paid one-half of the expense of the change, 'by the command of the statute, and hence under compulsion of law,' to quote from the Court of Appeals. The public interest, therefore, is made too much of. It is given an excessive, if not a false, quantity. Its use as a justification is open to the objection, made at the argument, it enables the state to do by two acts that which would be illegal if done by one."

To this effect are also *Shrader* v. *C., C., C. & St. L. Ry. Co.,* 242 Ill. 227, 89 N. E. 997, 26 L. R. A. (N. S.) 226; *Minneapolis* v. *St. Paul, M. & M. Ry. Co.,* 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313; *Burritt* v. *City of New Haven,* 42 Conn. 174; *Dahlgren* v. *Chicago, M. & P. S. Ry. Co.,* 85 Wash. 395, 148 Pac. 567; *City of Superior* v. *Roemer,* 154 Wis. 345, 141 N. W. 250; *Pabst Brewing Co.* v. *City of Milwaukee,* 157 Wis. 158, 147 N. W. 46.

We do not wish to be understood as holding that the city, in all cases where it grants a franchise to corporations or individuals to make use of its streets for quasi public purposes, and such use damages private property abutting on the street so used, is exempt from liability for such damage. Should a case arise where permission is given to an irresponsible or insolvent concern or individual to use the streets of the municipality for the purposes mentioned, we are not prepared to say that the municipality would not be liable for special damages done private property caused by such occupation and use of the streets. No such question, however, is presented in this case, and we refrain from expressing an opinion thereon.

A. G. Bruneau, a witness for the plaintiff, having qualified on direct examination to testify respecting the market value of the property in question, both before and after the erection of the viaduct, testified that the property, exclusive of improvements, was, just prior to the building of

the viaduct, of the market value of $100 per front foot facing on Fourth South street; that the depreciation caused by the viaduct was one-third; and that Fourth South Street is "coming in as a business street very fast." On cross-examination he was asked:

"Now, when you speak of Fourth South Street developing in a business way, do you, or do you not, consider that the erection of the viaduct on that street has benefited from a business point of view very much?"

Objection was made to the question on the ground that it was "incompetent, irrelevant, and immaterial, and not cross-examination." The ruling of the court sustaining the objection is assigned as error. The court was right. The evidence sought to be elicited related solely to benefits, if any, to property generally abutting on Fourth South Street by the erection of the viaduct; that is, the question calls for an answer respecting what are termed "general" benefits only. Evidence tending to show that property generally abutting on the street, practically all of which is differently situated with respect to the viaduct from the property in question, would not disprove, nor tend to disprove, or even weaken, the testimony of the witness respecting the depreciation of the market value of this particular property.

Two witnesses, E. M. Fowler and F. W. Little, who were called by the railroad company, testified as to the market value of plaintiff's property just prior to and after the erection of the viaduct. On direct examination by counsel for the railroad company, Mr. Little testified in part as follows:

"Q. I will ask you what, in your opinion, was the market value of the real estate * * * belonging to Mrs. Cook, excluding improvements, * * * just before February, 1912? A. Four thousand dollars. Q. In your opinion, did the erection of the viaduct depreciate the value of that real estate? A. I would say it did. * * * Q. How much, in your judgment? A. I think, probably, $400."

Mr. Fowler, on direct examination by counsel for the railroad company, testified on this point as follows:

"Q. How much do you consider that the real estate has

been depreciated in the market value by reason of the erection of the viaduct?· A. Three hundred and fifty dollars. * * * ·Q. Has Fourth South Street developed recently as a business street? * * *· A. Yes; it has developed. Q. In your opinion, state whether or not the viaduct has contributed to that or not.''

The last question was objected to on the ground that it was incompetent, irrelevant, and immaterial. The ruling sustaining the objections is assigned as error. The witness, in answer to questions propounded by the railroad company, having testified that the market value of plaintiff's property had depreciated in value $350—a substantial amount—by the erection of the viaduct, the fact that other property on the street had been benefited by the viaduct would in no possible way affect plaintiff's right to recover for the special damages, if any, done her property.

The judgment is affirmed. Plaintiff is entitled to recover her taxable costs from the railroad company, and the city is entitled to its taxable costs on this appeal from the plaintiff.

· STRAUP, C. J., and FRICK, J., concur.