CAROLINA & N. W. RY. CO. v. TOWN OF LINCOLNTON et al.

Circuit Court of Appeals, Fourth Circuit. July 1, 1929.

No. 2844.

720

John A. Marion, of York, S. C., and W. H. Childs, of Lincolnton, N. C. (Childs & Childs, of Lincolnton, N. C., on the brief), for appellant.

Sheldon M. Roper, A. L. Quickel, and Charles A. Jonas, all of Lincolnton, N. C., for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and COCHRAN, District Judge.

PARKER, Circuit Judge. This is an appeal from an order dismissing the bill of complaint in a suit to enjoin the enforcement of certain ordinances of the town of Lincolnton, N. C. The complainant in the court below was the Carolina & Northwestern Railway Company, a North Carolina corporation. The town of Lincolnton, its mayor and aldermen and its chief of police, were defendants. The ordinances were attacked on three grounds: (1) That they impaired the obligations of a contract between the complainant and the town; (2) that they violated the due process clause of the Fourteenth Amendment; and (3) that they constituted a burden upon interstate commerce. The jurisdiction of the District Court was invoked solely on these constitutional grounds. The District Judge thought, however, that no constitutional question was involved, and dismissed the bill for lack of jurisdiction.

The facts as alleged are as follows: In the year 1901 complainant maintained a line of railway through the town of Lincolnton which crossed Main and Water streets of the town at grade. In that year an ordinance was passed authorizing it to lower its track so as to pass under the streets and to make excavations in the streets for that purpose and bridge same. The ordinance granting the permission provided that the bridge to be built on Main street should be a "proper and good wooden bridge," and that on Wa-

ter street a "proper and sufficient bridge." It contained also the following provision: "The said rights and privileges to run its said line of road as herein granted are granted upon the further consideration that the said Carolina & Northwestern Railway Company, its successors and assigns, shall at all times in the future, so long as it maintains the said track to keep up and in good repair all bridges at its own proper expense and cost." Following the permission granted in this ordinance, complainant proceeded to change the grade of its roadbed and to make excavations through Main and Water streets for that purpose, which it covered with substantial wooden bridges.

The bridge on Main street is in the second block from the center of the town, and the other bridge is opposite it on Water street, which runs parallel with Main. In the year 1927 the fire limits of the town were extended so that they included both bridges. An ordinance forbade the repair of any building within the fire limits; and it is alleged that the purpose of extending the fire limits was to require that the wooden bridges be replaced with concrete structures. On July 12, 1928, an ordinance was passed declaring the Main Street bridge to be a nuisance, and requiring complainant to replace it with one made of concrete. This suit is brought to enjoin the enforcement of these ordinances, complainant contending that they impair the obligations of the contract embodied in the ordinance of 1901, that they would result in a taking of its property without due process of law, and that they impose a burden upon the interstate commerce in which complainant is engaged.

No facts are alleged upon which the conclusion can legitimately be based that the extension of the fire limits was not justified by the growth and development of the town, or that the replacing of wooden by concrete bridges was not required for the safety of the public, or that the building of concrete bridges would entail any undue hardship or unreasonable expense upon complainant. In the more than a quarter of a century that has elapsed since 1901, many towns have grown greatly, and with the progress and development which they have experienced many things are now required for the public safety which were not necessary then. As to whether a wooden bridge is suitable for spanning the excavation which complainant has made in Main street near the heart of the town, it appears that this street is a part of the hard-surfaced highway system of the state, which does not make use of wooden bridges even in rural sections.

Upon the allegations of the bill, we think it clear that the constitutional questions attempted to be raised are altogether lacking in merit, and that the suit was properly dismissed for lack of jurisdiction. We agree with the learned counsel for complainant that the question of jurisdiction must be determined upon the face of the bill. City Railway Co. v. Citizens' Street Ry. Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 1114; Cuyahoga-River Power Co. v. City of Akron, 240 U. S. 462, 36 S. Ct. 402, 60 L. Ed. 743. And we agree also that a bill alleges a case arising under the Constitution of the United States where it contains averments showing that the enforcement of a municipal ordinance authorized by the laws of the state will impair the obligations of contracts, deprive complainant of property without due process of law, or otherwise contravene constitutional provisions. Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510; City of Denver v. Mercantile Trust Co. (C. C. A. 8th) 201 F. 790, 798. But it is not sufficient that the bill merely assert that an ordinance violates constitutional rights; it must set forth facts from which the court can see that such rights are violated. Where the contention that they are violated is seen from the facts alleged to be without substantial merit, the court is without jurisdiction. There must be "a federal question, not in mere form, but in substance, and not in mere assertion, but in essence and effect." Cuyahoga River Power Co. v. Northern Ohio Co., 252 U. S. 388, 397, 40 S. Ct. 404, 408 (64 L. Ed. 626); Newburyport Water Co. v. Newburyport, 193 U. S. 561, 24 S. Ct. 553, 48 L. Ed. 795; Defiance Water Co. v. Defiance, 191 U. S. 184, 24 S. Ct. 63, 48 L. Ed. 140; Cyclopedia of Federal Procedure, Vol. 1, p. 353.

As there is no diversity of citizenship and jurisdiction must fail if it cannot be maintained on the ground that the case arises under the Constitution, it is not necessary that we consider whether the ordinances are valid under the law of the state; for, if not authorized by state legislation, they would not constitute action of the state of which complaint could be made under the Constitution. See New Orleans Water-Works v. Louisiana Sugar Co., 125 U. S. 18, 31, 8 S. Ct. 741, 31 L. Ed. 607; Hamilton Gaslight Co. v. Hamilton, 146 U. S. 258, 266, 13 S. Ct. 90, 36 L. Ed. 963; Lynchburg Traction & Light Co. v. City of Lynchburg (C. C. A.

4th) 16 F.(2d) 763, 764; City and County of San Francisco v. United Railroads of San Francisco (C. C. A. 9th) 190 F. 507. Many acts of a municipality may be illegal in their character when tested by the laws of the state, and not be violative of constitutional provisions, and consequently not furnish ground of jurisdiction in the federal courts. For the purposes of the case, therefore, we assume that the ordinances were duly authorized by state legislation; and the only question is whether such action, when authorized by the state, violates any constitutional provision. Owensboro Water Works Co. v. Owensboro, 200 U. S. 38, 26 S. Ct. 249, 50 L. Ed. 361.

■■ The first contention of complainant is that the ordinances impair the obligation of the contract contained in the ordinance of 1901, which required merely that wooden bridges be constructed. This contention, however, is manifestly lacking in merit, and cannot be said to present a substantial federal question. It is true that the ordinance of 1901 required that one of the bridges to be constructed should be of wood; but it also required that complainant should keep up and in good repair all of the bridges which would be made necessary by the excavation permitted. There was nothing in it allowing complainant to so occupy the streets because of the construction of the bridge for any particular length of time (Seaboard A. L. Ry. Co. v. City of Raleigh, 242 U. S. 15, 18, 37 S. Ct. 8, 61 L. Ed. 121), and certainly nothing to indicate that the town intended to surrender for an indefinite future the right to provide for the safety of the public using its streets, or the right to control, in the interest of fire prevention, the structures to be erected in or near the center of its business section. Wabash R. Co. v. Defiance, 167 U. S. 88, 94, 17 S. Ct. 748, 42 L. Ed. 87. And, if the town had attempted by contract to part with such rights, the contract would have been void, because contrary to public policy. Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721; Northern Pacific Ry. Co. v. Minnesota, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630; Chicago, B. & Q. Rwy. Co. v. People of the State of Illinois ex rel. Drainage Comm'rs, 200 U. S. 561, 591, 592, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175.

■■ There is likewise nothing in the contention that the ordinances deprive complainant of property without due process of law. The town allowed complainant for its own convenience to make excavations through the principal streets near the heart of the business section; and the most that the ordinances can be said to require is that the bridges built over these excavations be of fireproof material, as is required of other structures in the neighborhood, and, in the case of the Main street excavation, that the old wooden bridge be removed and a concrete bridge, in keeping with the paved street, be built in its stead. It is alleged that the fire limits of the town were extended for the purpose of necessitating the removal of the wooden bridges; but no facts are alleged which would justify the inference that the extension was not required in the interest of the public safety; nor does any reason appear why the town, in the exercise of the right vested in it to control its streets, might not have directly ordered that the wooden bridges be removed and fireproof or concrete bridges be erected in their places. And certainly, if it might have ordered directly that this be done, it is no objection to the ordinances that this was the object which they had in view. The same answer applies to the criticism that the ordinance condemning the Main street bridge as a nuisance was passed without notice to complainant. As the town, in the exercise of its control over the streets, could require the removal of the wooden bridge and the construction of a proper concrete or other fireproof bridge in its place, whether the wooden bridge was a nuisance or not, any failure to give notice with respect to declaring it a nuisance is manifestly immaterial.

The whole case resolves itself into a question as to the power of the town, after granting a license to complainant to cross its streets below grade, to pass ordinances for the safety of the public requiring that proper bridges be maintained across the excavations made in the streets for this purpose; and we think that it is clear that the granting of such a license does not deprive the town of the power to make reasonable regulations with regard thereto, and that such regulations cannot be said to violate either the "Contract" clause of the Constitution or the "Due Process" clause of the Fourteenth Amendment. As said by Mr. Justice Pitney in Atlantic C. L. R. Co. v. Goldsboro, supra, 232 U. S. 548, 558, 34 S. Ct. 364, 368 (58 L. Ed. 721):

"For it is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant; and that all con-

tract and property rights are held subject to its fair exercise. [Citing cases.] And the enforcement of uncompensated obedience to a regulation established under this power for the public health or safety is not an unconstitutional taking of property without compensation or without due process of law."

This was said in a case which upheld ordinances of the city of Goldsboro, N. C., requiring a railroad company at its own expense to lower the grades of its tracks to the grades of the streets of the city and to fill in between the rails, forbidding the shifting of cars at certain hours of the day, and imposing other restrictions as to the use of the tracks. The contention was made that the obligation of the contract embodied in the charter under which the tracks were laid was impaired by the ordinances, and that the property of the railroad company was taken without due process; but the court did not accept this contention.

In other cases the same principle has been applied. Thus, in New York, etc., R. Co. v. Bristol, 151 U. S. 556, 14 S. Ct. 437, 38 L. Ed. 269, the Supreme Court sustained a Connecticut statute providing for the elimination of grade crossings, and directing that this be done at the expense of the railroad companies, although the crossings had long before been established under legislative authority. In New Orleans Gas Light Co. v. Drainage Commission, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831, it was held that, although a gas company had laid its pipes under the streets by permission of the city, it might be required, in the exercise of the police power, to remove them at its own expense to make way for a system of drainage. In Northern Pac. Ry. Co. v. Minnesota, supra, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630, the Supreme Court upheld a municipal ordinance requiring a railroad to repair at its own expense a viaduct constructed by the city over its tracks, notwithstanding it had been built under a contract which provided that the city itself should keep it in repair for a number of years; the court holding that the right to exercise the police power for the safety of the public is a continuing one, which could not be contracted away.

In Mo. Pac. Ry. Co. v. Omaha, 235 U. S. 121, 35 S. Ct. 82, 83, 59 L. Ed. 157, an ordinance was upheld which required a railway company to construct a viaduct on one side of a street to accommodate the regular traffic, and also that of a street railway system. The railway objected, because such a viaduct would cost $80,000, whereas one sufficient to carry the traffic other than that of the street railway would cost only $30,000, also because the proposed viaduct left a part of the street open. The court speaking through Mr. Justice Day, said:

"That a railway company may be required by the State, or by a duly authorized municipality acting under its authority, to construct overhead crossings, or viaducts at its own expense, and that the consequent cost to the company as a matter of law is damnum absque injuria, or deemed to be compensated by the public benefit which the company is supposed to share, is well settled by prior adjudications of this court. [Citing cases.] This is done in the exercise of the police power, and the means to be employed to promote the public safety are primarily in the judgment of the legislative branch of the government, to whose authority such matters are committed, and so long as the means have a substantial relation to the purpose to be accomplished, and there is no arbitrary interference with private rights, the courts cannot interfere with the exercise of the power by enjoining regulations made in the interest of public safety which the legislature has duly enacted. * * * The necessity of the viaduct, and the manner of its construction, were primarily vested in the discretion of the city authorities, and that they have found cause to leave some part of the street still open to traffic does not afford any reason why the principal part of the traffic, including that of the street railway company, might not, in the interest of the public safety, be required to be carried by the overhead structure. *The local authorities are presumed to have knowledge of local conditions, and to have been induced by competent reasons to take the action which they did.*" (Italics ours.)

In the very recent case of Lehigh Valley R. Co. v. Board of Public Utility Com'rs, 278 U. S. 24, 49 S. Ct. 69, 73 L. Ed. ——, the court upheld an order of the board of public utility commissioners of New Jersey requiring the railway company to eliminate two grade crossings and substitute one overhead crossing at a prospective cost of $324,000. The court pointed out that the care of grade crossings is peculiarly within the police power of the states, and that, if it was contended that the cost of the proposed overhead crossing was such as to interfere with or impair economical management of the railroad, this should be made clear. In the case at bar, there is no allegation upon which such a contention could be based, and, so far as appears, no ground for such allegation. Consequently, the contention that the ordinances complained of are a burden upon interstate com-

merce lacks substantiality, as well as do the contentions that they violate the "contract" and "due process" clauses.

For the reasons stated, therefore, we are of opinion that the constitutional questions attempted to be raised were without substantial merit, and that, there being no diversity of citizenship, the learned judge below properly dismissed the bill for lack of jurisdiction. The order dismissing same is accordingly affirmed.

Affirmed.