June 30, 2020

**Supreme Court**

No. 2017-255-Appeal.
No. 2017-256-Appeal.
No. 2017-257-Appeal.
No. 2017-260-Appeal.
(KC 13-1128)

Manuel Andrews, Jr. et al.                    :

v.                    :

James Lombardi, in his capacity as Treasurer    :
   of the City of Providence, Rhode Island.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258  or  Email  opinionanalyst@courts.ri.gov,  of  any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2017-255-Appeal.
No. 2017-256-Appeal.
No. 2017-257-Appeal.
No. 2017-260-Appeal.
(KC 13-1128)

Manuel Andrews, Jr. et al.                    :

v.                    :

James Lombardi, in his capacity as Treasurer    :
    of the City of Providence, Rhode Island.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.** In response to a "fiscal hurricane,"[1] the City of

Providence (the City) took various actions to increase revenues and cut costs. One such action,

enabled by a 2011 state statute, was to pass an ordinance requiring retirees from the City's police

and fire departments to enroll in the federal Medicare program upon reaching the age of eligibility

instead of continuing to have the City pay for their private health insurance policies for life. Many

police and firefighter retirees filed suit challenging the ordinance, and most settled with the City

following court-ordered mediation. The settlement agreement required the police and firefighter

retirees to enroll in Medicare upon eligibility at age sixty-five, but it also required the City to pay

fees associated with late enrollment to Medicare for some retirees as well as various supplemental

options to Medicare, thereby bringing the overall health coverage closer to what it had been under

the previous plans for the police and firefighter retirees prior to the new City ordinance. However,

sixty-seven retirees opted out of the settlement (the plaintiffs) and pursued their civil claims

---

[1] The trial justice in this case referred to the City's financial situation in 2011 as a "Category 5 fiscal hurricane[.]"

through a bench trial. The trial justice ultimately found in favor of the City on all of the plaintiffs' claims, and the plaintiffs appealed from the final judgment. For the reasons set forth in this opinion, we affirm in part and vacate in part the final judgment of the Superior Court.

## I

## Facts and Procedural History

The plaintiffs[2] retired on various dates between November 1, 1980 and October 12, 2012, from positions with the Providence fire department or police department. The City of Providence Retirement Board approved each plaintiff's respective application for retirement in compliance with the procedures in place at the time of his or her retirement. After retirement, all plaintiffs received the health insurance coverage that was in effect when they retired, which differed among plaintiffs; that coverage was uninterrupted until May 1, 2013.[3] At present, all plaintiffs under the age of sixty-five continue to receive this coverage until they reach the age of eligibility for Medicare, on their sixty-fifth birthday.

On January 11, 2011, then Providence Mayor Angel Taveras appointed a Municipal Finances Review Panel (MFRP) to review the City's budget for fiscal years ending June 30, 2011 and June 30, 2012. On February 28, 2011, the MFRP released a report which concluded that the City faced a $69.9 million structural budgetary deficit for fiscal year ending June 30, 2011. The report concluded this deficit would increase to $109.9 million for fiscal year ending June 30, 2012. With respect to the City's retiree health care plan, the MFRP concluded that, as of June 30, 2009, the City had an unfunded accrued actuarial liability of $1.497 billion.

---

[2] The parties stipulated to the separation of plaintiffs into twelve groups, categorized according to the claimed source of their entitlement to the health care benefits, such as collective bargaining agreements (CBAs), interest arbitration awards (IAAs), or implied-in-fact contracts. *See infra* note 5.

[3] The various health insurance coverage plans in effect before May 1, 2013 are sometimes referred to as "legacy plans."

In 2011, the General Assembly enacted G.L. 1956 § 28-54-1 (the "Medicare Enrollment Statute"), which went into effect on June 29, 2011. The statute states as follows:

> "Every municipality, participating or nonparticipating in the municipal employees' retirement system, may require its retirees, as a condition of receiving or continuing to receive retirement payments and health benefits, to enroll in Medicare as soon as he or she is eligible, notwithstanding the provisions of any other statute, ordinance, interest arbitration award, or collective bargaining agreement to the contrary. Municipalities that require said enrollment shall have the right to negotiate any Medicare supplement or gap coverage for Medicare-eligible retirees, but shall not be required to provide any other healthcare benefits to any Medicare-eligible retiree or his or her spouse who has reached sixty-five (65) years of age, notwithstanding the provisions of any other statute, ordinance, interest arbitration award, or collective bargaining agreement to the contrary. Municipality provided benefits that are provided to Medicare-eligible individuals shall be secondary to Medicare benefits. Nothing contained herein shall impair collectively bargained Medicare Supplement Insurance." Section 28-54-1.

Less than one month later, on July 19, 2011, the City Council passed Chapter 2011-32, Ordinance No. 422 (the 2011 Medicare Ordinance), amending Chapter 17, Article VI of the Providence Code of Ordinances, which went into effect the same day. The 2011 Medicare Ordinance states, in relevant part:

> "Notwithstanding any other ordinance, collective bargaining agreement, or interest arbitration award:
>
> "(1) As a condition of receiving or continuing to receive retirement payments and health benefits, all retired individuals and spouses of retired individuals shall enroll in Medicare immediately upon eligibility. Any health benefits provided by the city to Medicare-eligible individuals shall be secondary to the Medicare benefits.
>
> "(2) With the exception of Medicare supplement or gap coverage, the city shall not provide Medicare-eligible retirees or Medicare-eligible spouses of retirees with healthcare benefits. The cost of said Medicare supplement or gap coverage shall be paid by the city and/or retiree as otherwise provided by ordinance or contract.

"(3) Nothing contained in this section shall be construed to confer healthcare benefits on a retiree or retiree's spouse which are not otherwise provided by ordinance or contract."

Following the enactment of the 2011 Medicare Ordinance, the City notified those who would be affected, including plaintiffs, that on May 1, 2013, the City would terminate City-paid health care coverage for those who were Medicare-eligible. For those who were not yet Medicare-eligible, the City would continue with the health care plans that were in place until such time that each individual became Medicare-eligible.

The Providence Retired Police and Firefighter's Association (the Retiree Association) and several individual police and firefighter retirees challenged the constitutionality of the 2011 Medicare Ordinance in a lawsuit filed on October 12, 2011 (the 2011 lawsuit). On January 30, 2012, the trial justice granted the police and firefighter retirees' motion for a temporary restraining order, thereby enjoining the City from both terminating the police and firefighter retirees' health benefits and forcing these retirees to enroll in Medicare. On May 14, 2012, the trial justice ordered the parties into mediation, which resulted in a tentative settlement agreement. On May 22, 2012, the City executed memoranda of understanding with the Retiree Association; Local 799, International Association of Firefighters (the Fire Union); and Providence Lodge No. 3, Fraternal Order of Police (the Police Union), which provided police and firefighter retirees with health care benefits greater than what had been provided in the 2011 Medicare Ordinance.

The settlement agreement, like the 2011 Medicare Ordinance, required the police and firefighter retirees who opted into the settlement to enroll in Medicare upon attaining eligibility. However, the settlement agreement also stated that the City would pay for certain costs associated with Medicare coverage, including penalties incurred from late enrollment in various Medicare supplemental programs such as Parts B and D. The Retiree Association, the Police Union, and the

- 4 -

Fire Union voted in favor of these settlement terms, and all members of the Retiree Association were given the opportunity to opt out. On April 12, 2013, after a fairness hearing, the trial justice determined that the proposed settlement was fair and reasonable, and she issued a final consent judgment reflecting the terms of the settlement (the 2013 Final and Consent Judgment).

In October 2013, individuals who opted out of the proposed settlement filed a complaint in the present case against the City challenging the constitutionality of the 2011 Medicare Ordinance and the Medicare Enrollment Statute.[4] The plaintiffs sought a declaratory judgment that: (1) the City breached its contractual obligations to each plaintiff by "unilateral[ly] terminat[ing] * * * the Health Care Benefits when Retirees reach[ed] the age of Medicare eligibility"; (2) the Medicare Enrollment Statute is both unconstitutional on its face and as applied because it violates the Contract Clause, Due Process Clause, and Takings Clause of the United States and Rhode Island Constitutions; (3) the 2011 Medicare Ordinance is both unconstitutional on its face and as applied because it violates the Contract Clause, Due Process Clause, and Takings Clause of the United States and Rhode Island Constitutions; and (4) plaintiffs are entitled to relief under a promissory estoppel theory. The plaintiffs also requested a permanent injunction directing the City's treasurer to provide the health care benefits that had allegedly been wrongfully withheld and prohibiting the

_____

[4] At the same time, these plaintiffs initiated a separate cause of action, KC 13-1129, challenging the constitutionality of an ordinance suspending cost-of-living adjustments for their pension benefits. The cases proceeded together through discovery, pretrial motions, and trial. *See Andrews v. Lombardi*, Nos. 17-262; 17-263; 17-264; 17-269, --- A.3d --- (R.I. 2020) (the Pension Case). Three of these plaintiffs also filed a petition to hold the City in contempt for its alleged violation of a 2004 consent judgment and 1991 consent decree related to cost-of-living adjustments for retirees' pensions. The hearing justice ultimately denied the petition on the parties' cross-motions for summary judgment, concluding that the proper way to challenge the City's newest ordinance suspending the cost-of-living adjustments was through a constitutional challenge, not by petition for contempt. *See Quattrucci v. Lombardi*, Nos. 17-248; 17-249, --- A.3d --- (R.I. 2020) (the Contempt Case).

- 5 -

City from terminating or suspending the health care benefits to which plaintiffs were allegedly entitled.

The City filed a motion for partial summary judgment on December 23, 2015, seeking summary judgment on plaintiffs' claims (1) that the Medicare Enrollment Statute and the 2011 Medicare Ordinance were facially unconstitutional because they violated the Contracts Clause, Takings Clause, and the Due Process Clause, (2) that the Medicare Enrollment Statute and the 2011 Medicare Ordinance were unconstitutional as applied because they violated the Takings Clause and the Due Process Clause, and (3) for promissory estoppel.  The plaintiffs did not oppose the entry of summary judgment on either the facial constitutional challenges to the Medicare Enrollment Statute and the 2011 Medicare Ordinance or the as-applied challenges under the Due Process Clause of either the state or federal constitutions.  However, plaintiffs did object to the entry of summary judgment concerning the claims for violation of the Takings Clause and promissory estoppel.  The trial justice issued a written decision on March 16, 2016, granting the City's motion for summary judgment with respect to plaintiffs' claims for violation of the Takings Clause and promissory estoppel.

This case proceeded to a bench trial in April 2016 on the remaining claims: breach of contract and violation of the Contract Clauses of the United States and Rhode Island Constitutions. The plaintiffs presented testimony from more than fifty individual plaintiffs as well as two experts in the area of actuarial science—William B. Fornia, who testified regarding municipal pensions, and Dale Yamamoto, who testified as an expert in the field of valuation of health care benefits and the design and funding of retiree health care plans.  The City presented testimony from four fact witnesses who worked in City Hall when the statute and ordinance were passed, including former Mayor Angel Tavaras; former Director of Administration and Chief of Staff Michael D'Amico;

former Deputy Director of Human Resources and former Manager of Benefits Margaret Wingate; and former Rhode Island Auditor General Ernest Almonte. In addition, the parties submitted a Joint Statement of Undisputed Facts as well as a stipulation which grouped plaintiffs into categories based on the source of their claimed entitlement to the lifetime health care benefits.[5]

On February 2, 2017, the trial justice issued a written decision denying plaintiffs' claims for breach of contract and violation of the Contract Clause of the Rhode Island and United States Constitutions. She therefore denied plaintiffs' request for a permanent injunction. Final judgment entered in the City's favor on February 24, 2017, and plaintiffs timely appealed. Several notices of appeal were filed and this Court consolidated them into three groups of appeals: the Contempt Case; the Pension Case; and the Medicare Case. This opinion shall address the arguments raised with respect to the 2011 Medicare Ordinance, the Medicare Case. Two other opinions, issued on

---

[5] The trial justice examined each of the twelve categories stipulated by the parties and determined that plaintiffs in each category had proved an entitlement to some form of health care benefits through either an express contract or an implied-in-fact contract. Category A is comprised of nine retired firefighters who claimed they were entitled to health care benefits for life pursuant to the CBA that was in effect at the time they retired. Category B is comprised of five retired police officers who also claimed an entitlement to health care benefits for life pursuant to the CBA in effect at the time they retired. Category C represents twenty-four retired police officers and firefighters who claimed an entitlement to lifetime health care benefits either pursuant to a CBA or during a period covered by an IAA. Category D includes three retired firefighters and one retired police officer who were not covered by a CBA at their respective dates of retirement but who claimed an entitlement to health care benefits through implied-in-fact contracts. Category E includes two retired police officers and two retired firefighters who claimed an entitlement to health care benefits pursuant to the CBA in effect on their respective retirement dates. Category F is comprised of nine retired firefighters and one retired police officer who claimed health care benefits pursuant to implied-in-fact contracts. Category G represents four retired police officers who relied on implied-in-fact contracts for their claims to lifetime health care benefits. Category H represents two retired firefighters who claimed an entitlement to health care benefits for life pursuant to an expired CBA which included a carry-over provision to the new CBA, ultimately ratified after they retired. Category I has one plaintiff, a retired firefighter who claimed an entitlement to health care benefits pursuant to an IAA. Category J represents two retired firefighters who, similar to the plaintiff in Category I, claimed an entitlement to the health care benefits pursuant to an IAA. Category K includes one retired firefighter, and Category L represents one retired firefighter; both claimed an entitlement to health care benefits for life pursuant to an implied-in-fact contract.

even date herewith, resolve the issues raised in the appeal from the judgment in the Contempt Case (*Quattrucci v. Lombardi*, Nos. 17-248; 17-249, --- A.3d --- (R.I. 2020)), and the issues raised related to plaintiffs' cost-of-living adjustments in the Pension Case (*Andrews v. Lombardi*, Nos. 17-262; 17-263; 17-264; 17-269, --- A.3d --- (R.I. 2020)).

## II

### Standard of Review

This Court "will not disturb the factual findings made by a trial justice sitting without a jury 'unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence.'" *Cranston Police Retirees Action Committee v. City of Cranston*, 208 A.3d 557, 571 (R.I. 2019) (*Cranston*) (quoting *Gregoire v. Baird Properties, LLC*, 138 A.3d 182, 191 (R.I. 2016)) *cert. denied*, 140 S. Ct. 652 (2019). "[W]e accord great weight to [the] trial justice's determinations of credibility, which, inherently, are the functions of the trial court and not the functions of the appellate court." *Gregoire*, 138 A.3d at 191 (quoting *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 210 (R.I. 2015)). "When the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his or hers even though a contrary conclusion could have been reached." *Id.* (brackets omitted) (quoting *McMahon*, 116 A.3d at 210). In addition, we "apply a *de novo* standard of review to questions of law that may implicate a constitutional right." *Cranston*, 208 A.3d at 571 (quoting *Goetz v. LUVRAJ, LLC*, 986 A.2d 1012, 1016 (R.I. 2010)).

## III

## Discussion

Before this Court, plaintiffs collectively[6] challenge the denial of two claims that were decided on motions for summary judgment, as well as numerous findings and conclusions that the trial justice made after the bench trial. Specifically, plaintiffs argue that the trial justice erred by: (1) dismissing plaintiffs' claim for breach of contract; (2) dismissing plaintiffs' claim for violation of the Contract Clauses of the Rhode Island and United States Constitutions; (3) granting summary judgment in favor of the City on plaintiffs' claim that the 2011 Medicare Ordinance violated the Takings Clause of the Rhode Island and United States Constitutions; and (4) granting the City's motion for summary judgment regarding plaintiffs' claim for promissory estoppel.

## A

### Breach of Contract

The trial justice denied and dismissed plaintiffs' claim that the 2011 Medicare Ordinance breached their contracts with the City because she determined that plaintiffs' challenge to the ordinance was an impermissible impairment of contract in violation of the Contract Clause. The United States Supreme Court has stated the importance of noting "the distinction between a statute that has the effect of violating or repudiating a contract previously made by the state and one that impairs its obligation." *Hays v. Port of Seattle*, 251 U.S. 233, 237 (1920). In *Hays*, the Supreme Court commented that a legislature attempts an impairment of a contractual obligation when,

---

[6] While the individual plaintiffs are represented by three separate attorneys, each of the three attorneys representing his respective group of individual plaintiffs incorporates his brothers' arguments by reference. We have therefore considered each of the arguments raised on appeal as applicable to each of the individual plaintiffs. We will refer to the collective "plaintiffs" without distinguishing between the way in which plaintiffs are grouped according to their respective appellate attorney.

through legislation, it materially alters the scope of its obligation pending or after performance by the other party. *Id.* Ordinarily, a party who breaches a contract has "a duty to pay damages for the reasonably foreseeable consequences of the breach." *Horwitz-Matthews, Incorporated v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996). Therefore, "[i]f a state breaches a contract but does not impair the counterparty's right to recover damages for the breach, the state has not impaired the obligation of the contract." *Redondo Construction Corp. v. Izquierdo*, 662 F.3d 42, 48 (1st Cir. 2011) (citing *Hays*, 251 U.S. at 237).

In other words, if the state breaches a contract by enacting a law, the state continues to have a contractual duty to pay damages to the nonbreaching party who has a "right to recover from the state for the damages sustained." *Hays*, 251 U.S. at 237. This is not a constitutional violation. *Horwitz-Matthews*, 78 F.3d at 1250 (stating "[i]t would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution"). On the other hand, if the state intends to preclude the availability of damages as a remedy for its breach, then there can be no breach of contract but instead a constitutional claim for impairment of the contract. *Id.* at 1251. If "[u]se of the ordinance was merely [a] [c]ity's way of breaching the contract" where the city may be "subject to a suit for damages[,]" then the nonbreaching party may be made whole and there is no contract impairment, thus no violation of the Contract Clause. *E & E Hauling, Inc. v. Forest Preserve District of Du Page County, Illinois*, 613 F.2d 675, 679, 680 (7th Cir. 1980). It is not a breach of contract if a "law was used to impair the contract rights. * * * In essence the ordinance would be a complete defense to a suit for damages. Only if that statute were declared unconstitutional could the plaintiff get a remedy for a breach of contract." *Id.* at 680.

The trial justice concluded that the 2011 Medicare Ordinance demonstrated the City's intent to preclude a damage remedy because the 2011 Medicare Ordinance stated that it applies to

retirees "[n]otwithstanding any other ordinance, collective bargaining agreement, or interest arbitration award * * *." The trial justice found that the 2011 Medicare Ordinance "establish[ed] revised benefit plans whereby * * * [p]laintiffs will continue to receive equivalent healthcare coverage. Simple monetary damages would not provide [p]laintiffs with a remedy that makes them whole." The trial justice concluded that the 2011 Medicare Ordinance "clear[ly]" provided a defense to a suit for breach of contract.

On appeal, plaintiffs argue that the trial court incorrectly concluded that plaintiffs' breach of contract claim was barred. The plaintiffs allege that the trial justice made "two fundamental mistakes: first, the court's failure to appreciate the intended interplay between the [2011] Medicare Ordinance and the CBA[]s; and, second, the court's mistaken belief that the City was providing the Medicare-eligible retirees with Medicare supplemental healthcare benefits."

It is a steadfast principle of our jurisprudence "not to pass on questions of constitutionality unless adjudication of the constitutional issue is necessary." *State v. Lead Industries Association, Inc.*, 898 A.2d 1234, 1238 (R.I. 2006) (quoting *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds by Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). Here, however, consideration of plaintiffs' constitutional arguments is unavoidable. In her analysis of the claims of those plaintiffs whose right to health care benefits arose under implied-in-fact contracts, the trial justice held that "the Medicare Ordinance amount[ed] to a substantial impairment of [their] contractual rights[.]" The City has not appealed from this finding and plaintiffs do not contend that this conclusion was in error. Our review of plaintiffs' Contract Clause claim is therefore inevitable, and we turn our attention to reviewing the trial justice's findings and conclusions with respect to this claim.

**B**

**Contract Clause**

"The Contract Clauses of the United States and the Rhode Island Constitutions prevent the state from enacting laws 'impairing the obligation of contracts.'" *Cranston*, 208 A.3d at 571 (brackets omitted) (quoting U.S. Const., Art. I, § 10, cl. 1; R.I. Const., art. 1, § 12). "[T]he Clause routinely has been applied to contracts between states and private parties" and "has been interpreted to apply to municipalities as well." *Id.* at 572 (quoting *Nonnenmacher v. City of Warwick*, 722 A.2d 1199, 1202 (R.I. 1999)).

The applicable three-prong analysis under which we analyze claims of violation of the Contract Clause is well established. We must first "determine whether a contract exists." *Cranston*, 208 A.3d at 572 (quoting *Nonnenmacher*, 722 A.2d at 1202). "[I]f a contract exists, the court then must determine whether the modification [complained of] results in an impairment of that contract and, if so, whether this impairment can be characterized as substantial." *Id.* (quoting *Nonnenmacher*, 722 A.2d at 1202). "Finally, if it is determined that the impairment is substantial, the court then must inquire whether the impairment, nonetheless, is reasonable and necessary to fulfill an important public purpose." *Id.* (quoting *Nonnenmacher*, 722 A.2d at 1202).

The trial justice analyzed plaintiffs' Contract Clause claim under the three-prong analysis summarized above. She first concluded that all plaintiffs had established beyond a reasonable doubt that the City had a contractual obligation to provide all plaintiffs with health insurance. The trial justice found that plaintiffs in Categories A, B, C, E, H, I, and J (*see supra* note 5) had proved express contracts with the City, whereas plaintiffs in Categories D, F, G, K, and L had proved implied-in-fact contracts. The parties do not dispute these findings. As such, we assume without

- 12 -

deciding that the City had entered into a contractual relationship with each plaintiff for the provision of health care benefits throughout their retirement.

Next, the trial justice concluded that, for plaintiffs with express contracts through the CBAs and IAAs, the City only minimally altered its contractual obligations because the "CBAs did not include a provision for lifetime healthcare benefits." Instead, the trial justice found the plain language of the CBAs and IAAs stated that, once a retiree became "eligible for another insurance plan, the City would be obligated to provide only excess coverage such that [p]laintiffs would receive an equivalent level of healthcare benefits." She further found that all relevant CBAs and IAAs "guarantee[d] that the City would provide excess coverage should a retiree become eligible for medical insurance under another plan[.]" Ultimately, the trial justice held that the 2011 Medicare Ordinance's requirement that eligible police and firefighter retirees enroll in Medicare upon reaching the eligible age did not substantially impair the City's contractual obligation to plaintiffs who retired under a CBA or IAA. Therefore, the Contract Clause analysis for these plaintiffs ended there.

With respect to plaintiffs with implied-in-fact contracts, however, the trial justice concluded that the 2011 Medicare Ordinance substantially impaired their contractual rights and she proceeded to the analysis of whether the impairment was "reasonable and necessary to fulfill an important public purpose." *Cranston*, 208 A.3d at 572 (quoting *Nonnenmacher*, 722 A.2d at 1202). The trial justice first concluded there was an important public purpose behind the 2011 Medicare Ordinance, because "[i]t was imperative for the City to address the unfunded liabilities[,]" including the approximate $1.5 billion in unfunded retiree health care liability.

To decide whether the 2011 Medicare Ordinance was reasonable and necessary to fulfill the important public purpose of addressing the fiscal crisis, the trial justice applied three factors adopted by the Second Circuit Court of Appeals:

> "Ultimately, for impairment to be reasonable and necessary under less deference scrutiny, it must be shown that the state did not (1) 'consider impairing the [obligations of its own] contracts on par with other policy alternatives' or (2) 'impose a drastic impairment when an evident and more moderate course would serve its purpose equally well,' nor (3) act unreasonably 'in light of the surrounding circumstances[.]'" *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 371 (2d Cir. 2006) (emphasis omitted) (quoting *United States Trust Company of New York v. New Jersey*, 431 U.S. 1, 30-31 (1977), *cert. denied*, 550 U.S. 918 (2007)).

She found that the City had adequately explored and attempted to enact other policy alternatives and that the City had adopted some of these alternatives to alleviate the fiscal crisis. The trial justice concluded that "the credible evidence * * * demonstrate[d] that the City [had] not consider[ed] impairing [p]laintiffs' contractual rights to healthcare benefits on par with other policy alternatives."

Similarly, the trial justice found that there had not been a "more moderate course available to adequately address the City's fiscal crisis and remedy the staggering unfunded retiree healthcare liability." In making this finding, the trial justice relied on testimony from Margaret Wingate, a former Manager of Benefits for Providence and Deputy Director of Human Resources, who testified as a witness for the City. During her testimony, Wingate discussed the hybrid plan that was afforded to those police and firefighter retirees who opted into the settlement. The hybrid plan required retirees to enroll in Medicare at age sixty-five and for the City to pay for many of the additional costs associated with ensuring "at least equal, if not greater coverage, than what retirees had prior to moving to Medicare" (the legacy plans). The trial justice stated that "[t]he implementation of the hybrid plan resulted in significant savings to the City that a more moderate

- 14 -

course would not have. The legacy plans that retirees had previously were, or are for those who currently are not eligible for Medicare, more expensive for the City to provide than the hybrid plan." The trial justice found that plaintiffs' expert actuarial witness, Dale Yamamoto, "himself admitted that the City should have had its retirees sign up for Medicare and only provide excess coverage so they would receive the same level of coverage as before" and thus "such solution was unavoidable."

Finally, the trial justice considered whether the City acted reasonably in light of surrounding circumstances. She found that the City did act reasonably because plaintiffs with implied-in-fact contracts believed they were on equal footing with plaintiffs who had written contracts, the City was in the midst of a fiscal emergency that threatened bankruptcy, and the 2011 Medicare Ordinance only operated prospectively. Furthermore, the trial justice held that plaintiffs did not rebut the City's "credible evidence" on this factor "beyond a reasonable doubt." Thus, the trial justice concluded that, with respect to plaintiffs who had been entitled to health care benefits through implied-in-fact contracts, the 2011 Medicare Ordinance did not violate the Contract Clause of either the United States or Rhode Island Constitutions. The trial justice also noted that, had she found substantial impairment for plaintiffs with express contracts, she would have drawn the same conclusion for the third prong of the Contract Clause analysis with respect to these categories of plaintiffs.

Before us, plaintiffs argue that the trial justice made critical errors in her factual findings and conclusions with respect to their Contract Clause claims.[7] We agree. After a thorough review

---

[7] The plaintiffs also argue that the trial justice erred by requiring them to prove *beyond a reasonable doubt* that the 2011 Medicare Ordinance was not reasonable and necessary to fulfill a significant and legitimate purpose. We addressed an argument regarding the burden of proof for the Contract Clause analysis in *Cranston Police Retirees Action Committee v. City of Cranston*, 208 A.3d 557 (R.I. 2019), *cert denied*, 140 S. Ct. 652 (2019), where the same trial justice conducted a Contract Clause analysis of the City of Cranston's ten-year suspension of the COLA

of the record, it is our opinion that the trial justice overlooked or misconceived evidence in several crucial respects.

When the trial justice concluded that those plaintiffs whose claims for lifetime health care benefits were based on express contractual obligations under CBAs or IAAs had not demonstrated either an impairment or substantial impairment of such obligations, she quoted language common to all plaintiffs' CBAs at issue in this case: "Should said member or any member of his family be eligible for medical insurance under Blue Cross or *any other plan*, then the City will be obligated to furnish only excess coverage so that said member will have equivalent coverage as that offered by the City." The language, she concluded, constituted a "guarantee that the City would provide excess coverage should a retiree become eligible for medical insurance under another plan * * *." Thus, applying the unambiguous language of the CBAs, she determined that the City had not impaired its contractual obligation to those plaintiffs. With respect to those plaintiffs whose rights to health care benefits arose from an implied-in-fact contract, the trial justice incongruously found that the 2011 Medicare Ordinance did amount to a substantial impairment of their contractual rights because, she concluded, "the promise of healthcare benefits for life induced [them] to work for the City, and they relied upon continued receipt of that benefit when they retired."

It is clear to us, however, that several of the trial justice's findings were based upon a misperception of the evidence. For example, her finding that the 2011 Medicare Ordinance did

_____

for some retirees. *Cranston*, 208 A.3d at 565, 574. We approved her allocation of the burdens of production as well as her application of the "beyond a reasonable doubt" burden of proof, borne by the plaintiff, on the third prong of the analysis once the government had met its burden to proffer credible evidence justifying its impairment of its contractual obligation. *Id.* at 572, 574. Moreover, it is well settled that legislative action, whether state or municipal, "is presumed constitutional and will not be invalidated by this Court unless the party challenging the [legislation] proves *beyond a reasonable doubt* that the legislative enactment is unconstitutional." *Parella v. Montalbano*, 899 A.2d 1226, 1232-33 (R.I. 2006); *see Town of Glocester v. Olivo's Mobile Home Court, Inc.*, 111 R.I. 120, 124, 300 A.2d 465, 468 (1973). We therefore reject this argument.

not substantially impair the City's contractual obligation to those plaintiffs covered by CBAs was based upon her conclusion that, once a retiree became eligible for Medicare, he or she received "equivalent healthcare coverage" under the plain language of the respective CBA. This "equivalent coverage" would consist of standard Medicare benefits plus excess or gap coverage paid by the City. Presumably, this overall coverage would be consistent with the City's obligation under all relevant CBAs that "[s]hould [a] member or any member of his family be eligible for medical insurance under Blue Cross or *any other plan*, then the City will be obligated to furnish only excess coverage so that said member will have equivalent coverage as that offered by the City."

The record, however, does not support the contention that any plaintiffs were in fact receiving excess coverage from the City. As the City itself acknowledges in its brief, "the record clearly demonstrates that the City was not providing any health coverage to retirees who enrolled in Medicare unless they opted-in to the City's settlement[.]" The City goes on to assert that the trial court indeed recognized this fact. We disagree. Clearly, the health care coverage provided by the City under the CBAs before the passage of the 2011 Medicare Ordinance was not the equivalent to coverage consisting only of basic Medicare benefits.

With respect to the trial justice's examination of the three factors set forth in *Buffalo Teachers Federation*, cited *supra*, we take issue only with respect to her finding "that the City presented sufficient credible evidence that there was no more moderate course available to adequately address the City's fiscal crisis and remedy the staggering unfunded retiree healthcare

liability." It is our opinion that the trial court's reasoning is also based upon the faulty premise that plaintiffs were in fact receiving supplemental coverage from the City.

The trial justice placed great emphasis on the testimony of Margaret Wingate, the City's Manager of Benefits, who administered what she characterized as a "hybrid plan." Under this plan, a retiree must enroll in Medicare Part A at age sixty-five. The retiree could also apply to the City for coverage under Parts B and D, but any coverage under Part B would be at the retiree's own expense. The trial justice noted that "[c]rucially, Ms. Wingate credibly testified that the overall objective of the hybrid plan was for the City to ensure that it provided at least equal, if not greater, coverage than what retirees had prior to moving to Medicare." The trial justice concluded that "[t]he implementation of the hybrid plan resulted in significant savings to the City that a more moderate course would not have. The legacy plans that retirees had previously were, or are for those who currently are not eligible for Medicare, more expensive for the City to provide than the hybrid plan." As Ms. Wingate herself testified, however, the hybrid plan pertained only to those retirees who had opted into the settlement.

After carefully reviewing the trial justice's decision and the voluminous record, we are satisfied that two critical findings in the court's Contract Clause analysis are constructed upon the faulty premise that plaintiffs who have retired were in fact receiving supplemental medical benefits under the hybrid plan. The two findings are that (1) the City did not impair its contractual obligation to plaintiffs covered by CBAs or IAAs, and (2) the City presented sufficient credible evidence that no more moderate course was available to address the City's financial condition.

## C

## Other Claims

The plaintiffs also appeal from the part of the judgment in which the trial justice granted summary judgment in favor of the City on their claims for violation of the Takings Clause of the Rhode Island and United States Constitutions and for promissory estoppel. The trial justice's decision addressed these claims as raised and argued in both the Pension Case and this Medicare Case, and, for the reasons stated in our opinion in the Pension Case, issued on even date herewith, summary judgment granted in favor of the City on these two claims is affirmed. *See Andrews v. Lombardi*, Nos. 17-262; 17-263; 17-264; 17-269, --- A.3d --- (R.I. 2020).

## IV

## Conclusion

The 2013 Final and Consent Judgment in the 2011 lawsuit from which the plaintiffs opted out was entered as a joint exhibit at the commencement of trial.[8] As the parties explain in their Joint Statement of Undisputed Facts, "the settlement required that retirees enroll in Medicare upon eligibility. However, as part of the settlement, the City agreed to pay for certain costs associated with Medicare coverage to include, without limitation, penalties associated with late enrollment in Medicare Part B, a Medicare supplemental plan and the premium for [Medicare Part D]." We also note that, under the explicit terms of the 2011 Medicare Ordinance, the City is authorized to provide "Medicare supplement or gap coverage[.]"

---

[8] During trial, the City objected to the use of the 2013 Final and Consent Judgment to establish that there were more moderate courses of action available to the City, arguing that it had been admitted only for the limited purpose of establishing the date of the settlement and "a variety of factual pieces of information." The trial justice rejected the argument and the City has not filed a cross-appeal challenging this ruling.

We are also mindful that our decision marks but another chapter in the protracted dispute between the City of Providence and its retired firefighters and police officers. In addition, we see little to be gained by further litigation on the issue of health care benefits for these plaintiffs. We find no error in the trial justice's pronouncements that the 2011 Medicare Ordinance was passed for a significant and legitimate public purpose, that the City did not consider the change to retirees' health care benefits on par with other policy alternatives, and that the change was reasonable under the circumstances. It is our opinion, however, that she misconceived the evidence with respect to the health care benefits that the plaintiffs were receiving from the City and that this error informed her findings that the plaintiffs would continue to receive equivalent health care coverage. We are convinced nevertheless that the controversy ought to be resolved by awarding the plaintiffs the same remedies for health care as provided in the 2011 lawsuit's settlement agreement approved in the 2013 Final and Consent Judgment. It is nothing more than what the City has agreed to provide for the opt-in retirees and indeed is contemplated in the 2011 Medicare Ordinance, which allows for the City's payment of "Medicare supplement or gap coverage" when "otherwise provided by ordinance or contract."

For the reasons set forth in this opinion, the judgment of the Superior Court is affirmed with respect to the plaintiffs' claims for breach of contract, violation of the Takings Clause of the Rhode Island and United States Constitutions, and promissory estoppel. The judgment of the Superior Court is vacated with respect to the plaintiffs' claim for violation of the Contract Clause. The case shall be remanded to the Superior Court with instructions to enter judgment consistent with the "specific provisions pertaining to the Medicare Ordinance" as set forth in the Final and Consent Judgment entered in PC 11-5853 and PC 12-3590 on April 12, 2013.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Manuel Andrews, Jr. et al. v. James Lombardi, in his capacity as Treasurer of the City of Providence, Rhode Island. |
| **Case Number** | No. 2017-255-Appeal. No. 2017-256-Appeal. No. 2017-257-Appeal. No. 2017-260-Appeal. (KC 13-1128) |
| **Date Opinion Filed** | June 30, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For the Plaintiffs: Lauren E. Jones, Esq. Kevin F. Bowen, Esq. Thomas M. Dickinson, Esq. Thomas J. McAndrew, Esq. Robert S. Thurston, Esq. |
| | For the Defendant: William K. Wray, Jr. Kenneth B. Chiavarini, Esq. William M. Dolan, Esq. Matthew T. Jerzyk, Esq. Nicholas L. Nybo Esq. Jeffrey T. Dana, Esq. |